[Crim. No. 3458 .   Third Dist.   Jan. 2, 1964.]

THE  PEOPLE, Plaintiff and Respondent, v.  WILLIAM LEE CLABORN, Defendant and Appellant.

40

William H. Whittington, Jr., under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Roger E. Venturi, Deputy Attorney General, for Plaintiff and Respondent.

PIERCE, P. J.—Defendant was convicted of violation of Penal Code section 245: assault "with a deadly weapon, or instrument or by any means of force likely to produce great bodily injury," the instrumentality or force here employed being an automobile.

On appeal from the judgment after conviction defendant's contentions are: (1) the evidence is insufficient to support the jury's implied finding that defendant intended to strike the victim with his automobile; (2) the district attorney was guilty of misconduct, incurable by an instruction by the court to disregard, in asking defendant on the witness stand if he had ever had any fights with law enforcement officers before. Neither contention can be sustained.

On the afternoon of December 31, 1962, defendant became embroiled in a heated discussion with his father at their home in Cottonwood, during which there was a physical

struggle and verbal abuse of the father by defendant. Defendant's mother phoned her daughter, who phoned the police. Defendant then knocked off his mother's glasses. He was ordered out of the house and departed in an automobile. He proceeded down a road and made a right turn onto First Street. The victim, a deputy sheriff, was proceeding in the opposite direction on First Street, driving to apprehend defendant in response to the daughter's phone call. Defendant's car had been described to the officer; he recognized it and lighted his red spotlight as an indication that defendant should stop. The defendant, however, continued his course, and suddenly, when 75 feet separated the two cars, altered his course, aiming his vehicle directly at the officer's car. The officer swerved his car to the extreme right side of the roadway and halted. There was a head-on collision during the last few moments prior to which the officer observed defendant appear to clench his teeth and tighten his grip on the steering wheel. Immediately after the collision, defendant left his car, shouted, "You son-of-a-bitch, I didn't kill you this way, but I will kill you now," and then physically attacked the officer who had also gotten out of his car. Defendant was in a rage and it took three men, including the officer, to subdue and handcuff him.

After this incident, locked skid marks made by defendant's vehicle were measured, extending from the officer's car back for a distance of 21 feet. Defendant argues that this proves conclusively he had no intention to collide with the officer's vehicle. We cannot agree. Defendant during these last moments had made no effort to veer, or change direction so as to avoid the officer's vehicle. Moreover, even though the skid marks did indicate a last moment change of intent (perhaps motivated by realization that in his effort to harm the officer he himself would be injured), guilt for the consequences of the force defendant had set in motion was not thereby absolved. ▮▮ Abandonment of intent is only a defense if the attempt to commit the crime is freely and voluntarily abandoned *before* the act is put in the process of final execution. (*People* v. *Von Hecht,* 133 Cal.App.2d 25, 36 [283 P.2d 764].) ▮▮ As stated in 15 American Jurisprudence, section 333, pages 22-23: "There is in every design or plan to commit a crime a place of repentance or locus penitentiae whereby the one planning to commit it may abandon the idea and thus avoid criminal liability. . . . It is obvious, however, that where the crime is consummated, there is no

field for an application of the doctrine." (See also Miller on Criminal Law, p. 100.) And it is stated in 22 Corpus Juris Secundum, page 127 : "where one puts in force an agency for the commission of a crime, he, in contemplation of the law, accompanies the agency to the point where it becomes effectual." This language, applied in a poisoned candy case, has equal application to belated and ineffectual attempts to recontrol the criminally unloosed force which causes the harm. (See *People* v. *Jones,* 112 Cal.App 68, 75 [296 P. 317]; *People* v. *Stewart,* 97 Cal. 238 [32 P. 8].)

Moreover, the offense of assault with a deadly weapon requires no proof of a *specific* intent to commit the offense. "If a rifle is deliberately and unlawfully fired toward another person in a manner 'likely to produce great bodily injury,' an assault with a deadly weapon may be accomplished even if the defendant does not really intend to *hit* the victim." (*People* v. *Griffin,* 90 Cal.App.2d 116, 120 [202 P.2d 573].)

There can be no doubt that an automobile used, as the facts show defendant's car was used here, was "a deadly weapon" or "instrument" or "force likely to produce great bodily injury." (Pen. Code, § 245; *People* v. *Mortensen,* 210 Cal.App.2d 575, 582 [26 Cal.Rptr. 746].) When an instrument is capable of being used in a dangerous or deadly manner and it may fairly be inferred from the evidence in a specific case that the defendant intended so to use it, its character as such a weapon is established. (*People* v. *Cook,* 15 Cal.2d 507, 517 [102 P.2d 752].)

Defendant's contention that his statement, "I didn't kill you this way, but I will kill you now," was improperly received in evidence is unsound. It was material and relevant to his intent and motive. It was admissible as a defendant's declaration against interest. (Witkin, Cal. Evidence, § 270, p. 308.)

Defendant's next contention is that the district attorney was guilty of prejudicial misconduct when, during the cross-examination of defendant, he asked him if he had ever had any fights with law enforcement officers before. Objection was made to the question, the jury was excused and the question of the admissibility of this testimony was argued. The court ruled it inadmissible, recalled and admonished the jury to disregard the question. Defendant, notwithstanding the admonition, contends the harm could not be erased; that the mere asking of the question seriously prejudiced him in

the minds of the jury. We hold otherwise; in fact, in our view, the court without error might well have admitted this evidence.

The reasons given by the trial judge for rejecting the evidence were that there are only two instances when proof of previous illegal activites by a defendant is admissible: (1) in cross-examining the defendant, when there has been a previous *felony conviction* and the evidence is introduced for impeachment purposes, and (2) when the testimony is relevant to show a common plan, scheme or design. Here the question clearly did not call for an answer showing a felony conviction and the court did not deem it to be relevant in the second category.

In our view, however, the testimony was probably admissible on another theory. As is usually the case when the act is admitted, defendant's *intent* in driving his automobile into that of the officer was a vital factor. ▇▇ Intent signifies an absence of accident, inadvertence or casualty. It is distinguishable from design or plan which, when the act itself is denied, is relevant to prove it was committed. "In proving intent, the act is conceded or assumed; what is sought is the state of mind that accompanied it." (2 Wigmore, Evidence (3d ed.) § 300, pp. 192, 193.) The theory of proving intent by other similar acts is that "an unusual and abnormal element might perhaps be present in one instance [here the striking of the officer], but the oftener similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them." (*Op. cit.*, § 302, p. 196.) ▇▇ Thus the fact that the prosecution could show that defendant had a penchant for fighting with police officers is relevant to answer his defense that the act here involved was inadvertent. And it is also admissible. Dean Wigmore further states: "This use of such evidence [i.e., to prove intent] is universally recognized. As to the *similarity* of the other acts, no fixed rule can be formulated. ... The precedents show every variety of circumstances, and a correct application of the principle would receive any evidence of the sort which conveys any real probative indication of the defendant's intent." (*Op. cit.*, § 363, pp. 275, 276; § 364, p. 285.)

The rule hereinabove stated was applied by our Supreme Court in *People* v. *Wells,* 33 Cal.2d 330, 342, 343 [202 P.2d 53], holding in a capital offense charge of assault upon a prison guard by a lifetermer that evidence of previous misconduct towards other prison guards was admissible. This

decision cites with approval *Dietz* v. *State,* 149 Wis. 462 [136 N.W. 166, Ann. Cas. 1913C 732], where evidence of assaults upon, and resistance to, arrests by law enforcement officers, was admitted as relevant to a claim of self-defense in a charge that defendant had killed a sheriff.

The rule of *inclusion* just discussed cannot be applied, however, without giving consideration to an almost antithetical rule of exclusion, to wit: that evidence of other criminal offenses committed, offered *merely* to prove a defendant's propensity for criminal behavior, is inadmissible. (*People* v. *Westek,* 31 Cal.2d 469, 476 [190 P.2d 9].)

It has been said that such evidence "is objectionable, not because it has no appreciable probative value, but because it has too much. The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take proof of it as justifying a condemnation irrespective of guilt of the present charge." (1 Wigmore, Evidence (3d ed.) § 194, p. 646.) The same author states as another reason for excluding such evidence that, if admitted, too great a burden is placed upon a defendant who must then defend against not only the present charge, but many. (*Op. cit.,* p. 646.)

The rule stated penultimately—that evidence of prior similar offenses relevant to prove intent *is* admissible—is not an exception to the exclusionary rule; in fact, the latter is the exception to the general principle "that all facts affording any reasonable inference as to the act charged are relevant and admissible." (1 Wigmore, Evidence (3d ed.) § 216, p. 716.)

It can be stated as a general proposition that when evidence is offered for one purpose and under established rules is admissible for that purpose, it does not become inadmissible because it does not satisfy the rules applicable to it in some other capacity and because the jury might consider it for the improper purpose. (*People* v. *Burton,* 55 Cal.2d 328, 348 [11 Cal.Rptr. 65, 359 P.2d 433]; 1 Wigmore, Evidence (3d ed.) § 13, p. 300.)

Therefore, as we have shown, the rule is settled that evidence of similar offenses to prove intent in an assault case is not inadmissible because it incidentally proves a general propensity for crime. Nevertheless, evidence offered regarding other offenses should be received with caution. A trial court is vested with discretion at least when the evidence

offered is of but slight weight or importance. (*People* v. *Burton, supra,* at p. 348.)

The record before us in this case does not disclose the precise nature of the evidence the district attorney had proposed to produce. When his question was asked on cross-examination, the court properly excused the jury and requested an offer of proof. Before this was stated, however, the court indicated that only evidence of a prior felony conviction or acts relevant to show design would be admissible and further suggested that evidence of other altercations between defendant and police officers would not establish such design. The district attorney did not pursue the matter, but in the colloquy between the court and counsel it was clear the question had not been an idle one; that a report of a mentioned doctor, which was known to the court and counsel but which is not in the record, had in fact contained information regarding a number of previous fights with officers engaged in by defendant. The questioning appears, therefore, to have been in good faith.

We do not hold here that answer to a question put to a defendant under cross-examination: "Have you had other fights with police officers?" should in all cases be permitted. We do hold that under the circumstances of this case the answer might well have been permitted and other evidence of quarrels with police officers could properly have been received.

Even if it could be said, however, that the evidence was inadmissible and the question improper, we do not deem this to be a matter which the judge's admonition did not cure. (*People* v. *Grimes,* 113 Cal.App.2d 365 [248 P.2d 130].) In short, our conclusion is that the evidence was probably admissible and therefore defendant has not lost but benefited by the court's ruling. In no event can defendant's rights be held to have been prejudiced.

We find no other error.

The judgment is affirmed.

Schottky, J., and Friedman, J., concurred.