TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

|                          |   |                  |
|--------------------------|---|------------------|
| OPINION                  | : | No. 86-901       |
|                          | : |                  |
| of                       | : | January 28, 1987 |
|                          | : |                  |
| JOHN K. VAN DE KAMP      | : |                  |
| Attorney General         | : |                  |
|                          | : |                  |
| RODNEY O. LILYQUIST      | : |                  |
| Deputy Attorney General  | : |                  |
|                          | : |                  |

---

THE HONORABLE THOMAS W. SNEDDON, JR., DISTRICT ATTORNEY, COUNTY OF SANTA BARBARA, has requested an opinion on the following questions:

1. Does a district attorney have the authority to prohibit or allow the carrying of firearms by welfare fraud investigators employed in his office while such persons are off duty?

2. Would a welfare fraud investigator employed in a district attorney's office be required to have a license to carry concealed a concealable weapon while off duty?

1

CONCLUSIONS

1. A district attorney while having the authority to prohibit or allow the carrying of firearms by welfare fraud investigators employed in his office while such persons are on duty, lacks such authority when the investigators are off duty.

2. A welfare fraud investigator employed in a district attorney's office is exempted by section 12027 of the Penal Code from the requirement to have a license to carry concealed a concealable weapon while off duty.

ANALYSIS

From time to time the courts and this office have examined whether certain "peace officers" under specified conditions may or may not carry various types of weapons. (See, e.g., Stuessel v. City of Glendale (1983) 141 Cal. App. 3d 1047; California State Employees' Assn. v. Way (1982) 135 Cal. App. 3d 1059; California State Employees' Assn. v. Enomoto (1981) 118 Cal. App. 3d 599; 65 Ops. Cal. Atty. Gen. 674 (1982); 65 Ops. Cal. Atty. Gen. 527 (1982); 64 Ops. Cal. Atty. Gen. 832 (1981).)

The two questions presented for analysis concern welfare fraud investigators employed in a district attorney's office. The primary duties of these officers involve the enforcement of the provisions of the Welfare and Institutions Code. May they be prohibited or allowed by the district attorney to carry firearms while off duty? If they may carry firearms while off duty, would they need a license to carry concealed a concealable weapon at such time?

1. Authority of the District Attorney

In 65 Ops. Cal. Atty. Gen. 527, *supra* , we were asked whether the chief of the California State Police Division had the authority to prohibit or allow the carrying of firearms by division security officers while off duty. The applicable statute designating these officers as "peace officers" contained the following language: "Such peace officers may carry firearms only if authorized by and under such terms and conditions as are specified by their employment agency." (Pen. Code, § 830.4.)[1] In concluding that this statutory provision did not give authority to the chief to control the carrying of firearms by the officers while off duty, we stated:

"The reason for authorizing an employing agency to control the

_____

[1]All references hereafter to the Penal Code are by section number only.

2

carrying of firearms by its employees at a facility operated by the agency or at any place where the employees are acting within the scope and in the course of their employment is apparent. However, we see no reason why the employing agency would need or want to control the carrying of firearms by its peace officer employees at times and places unrelated to their employment. If the power granted the employing agency . . . is construed to extend to any time and place it would mean that the designated officers would need the authorization of their employing agency to carry rifles on hunting trips or even national guard training exercises. Further, such control would extend only to the designated officers and not to the nonpeace officer employees of the agency. We believe that the Legislature did not intend to grant the employing agency any such control over the nonemployment related conduct of its security officers. By granting the authority to the employing agency' we think the Legislature meant it to apply only to employment related conduct. Such limitation is also suggested by the words 'under such terms and conditions as are specified' since an employer's authority to impose terms and conditions on an employee's conduct is normally limited to the latter's employment related conduct. Thus we interpret the provision to be applicable only to employment related situations, i.e., to the carrying of firearms at the place of employment subject to control by the employing agency and to the carrying of firearms by the employee any place while acting within the scope and in the course of his or her employment." (65 Ops. Cal. Atty. Gen. 527, *supra* , 533.)

To see whether the same reasoning would apply to welfare fraud investigators employed in a district attorney's office, we first examine the manner in which they are designated "peace officers" by the Legislature. Here, two different statutes appear to be applicable. Subdivision (a) of section 830.1 states:

"Any sheriff, undersheriff, or deputy sheriff, regularly employed and paid as such, of a county, any police officer of a city, any police officer of a district (including police officers of the San Diego Unified Port District Harbor Police) authorized by statute to maintain a police department, any marshal or deputy marshal of a municipal court, any constable or deputy constable, regularly employed and paid as such, of a judicial district, or *any inspector or investigator regularly employed and paid as such in the office of a district attorney, is a peace officer.*" (Emphasis added.)

Section 830.31, on the other hand, provides:

"*The following persons are peace officers* whose authority extends to

3

any place in the state for the purpose of performing their primary duty or when making an arrest pursuant to Section 836 as to any public offense with respect to which there is immediate danger to person or property, or of the escape of the perpetrator of such offense, or pursuant to Section 8597 or 8598 of the Government Code. *Such peace officers may carry firearms only if authorized and under terms and conditions specified by their employing agency.*

"    .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(d) A *welfare fraud investigator* or inspector, *regularly employed and paid as such by a county*, if the primary duty of any such peace officer is the enforcement of the provisions of the Welfare and Institutions Code.

"(e) *A child support investigator or inspector, regularly employed and paid as such by a district attorney's office,* if the primary duty of any such peace officer is the enforcement of the provisions of the Welfare and Institutions Code and Section 270.

"    .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   ."

(Emphases added.)[2]

"Any" investigator regularly employed and paid as such in the office of a district attorney (§ 830. 1, subd. (a)) would seemingly include welfare fraud investigators. (See California State Auto. Assn. Inter-Ins. Bureau v. Warwick (1976) 17 Cal. 3d 190, 195; Estate of Wyman (1962) 208 Cal. App. 2d 489, 492; Emmolo v. Southern Pacific Co. (1949) 91 Cal. App. 2d 87, 92.) It is apparent, however, that if subdivision (e) of section 830.31 concerning child support investigators is to have effect, the term "any" of section 830.1 does not include each and every investigator in a district attorney's office. (See Northwest Casualty Co. v. Legg (1949) 91 Cal. App. 2d 19, 25.) Under the rule that "when a special and general statute are in conflict, the former controls" (Agricultural Labor Relations Bd. v. Superior Court (1976) 16 Cal. 3d 392, 420), we would place child support investigators employed by a district attorney's office under section 830.31 rather than section 830.1.

A child support investigator, however, is not a welfare fraud investigator, and

---

[2]Section 836 is the basic statute describing when a peace officer is authorized to make an arrest. Government Code sections 8597 and 8598 concern the existence of a war emergency, a state emergency, or a local emergency. Under section 270 various acts of child neglect are designated to be misdemeanors. The provision concerning the carrying of firearms upon the terms and conditions specified by an employing agency is not contained in section 830.1.

4

the Legislature appears to have distinguished between the two in designating the appropriate employing agency. The rule that general law is controlled by special law is normally applied only "to the extent the two are irreconcilable." (Governing Board v. Mann (1977) 18 Cal. 3d 819, 828.) Is there any conflict between sections 830.1 and 830.31 with respect to welfare fraud investigators? It is usually assumed that the use of different terms by the Legislature in related statutory provisions signifies a different legislative purpose and intent. (People v. Moore (1986) 178 Cal. App. 3d 898, 903.) Because the Legislature has used "county" in subdivision (d) and "district attorney's office" in subdivision (e) of section 830.31, this assumption would place welfare fraud investigators employed in a district attorney's office under section 830. 1.

On the other hand, we are informed that welfare fraud investigators are frequently employed in county departments other than the district attorney's office. The Legislature may have used the term "county" in subdivision (d) of Section 830.31 merely for the convenience of having one encompassing term.

We believe that these investigators come under the definition of "peace officer" contained in subdivision (d) of section 830.3 1 rather than contained in section 830.31. They are employed by the county, albeit as members of the district attorney's office. It is their employment responsibilities and duties that are significant in considering whether carrying a firearm would be necessary while they are on duty. The Legislature has determined that where the primary duty of a welfare fraud investigator is the enforcement of the Welfare and Institutions Code, the need to carry a firearm should be left to the discretion of the employing agency.

We are directed to interpret statutes " 'so as to effectuate the purpose of the law' " (People v. Craft (1986) 41 Cal. 3d 554, 559), with "the various parts of a statutory enactment . . . harmonized by considering the particular clause or section in the context of the statutory framework as a whole" (People v. Black (1982) 32 Cal. 3d 1, 5). Section 830. 1 includes officers whose duties embrace the investigation of all types of crimes, while section 830.31 officers are limited in their primary duties to enforcing only certain specified laws. This suggests that the Legislature has required employer approval for carrying firearms in section 830.31 because of the perception that such limited duties need not always involve the use of firearms. Hence, we place welfare fraud investigators employed in a district attorney's office under section 830.31 rather than section 830.1 because of their limited primary duties.

By so concluding, we may rely upon the reasoning of our opinion in 65 Ops. Cal. Atty. Gen. 527, *supra* . No relevant changes have been made in this area of the law since our 1982 opinion, and the same considerations mentioned there are persuasive here in interpreting the virtually identical statutory language.

5

We note that a recent legislative amendment supports the conclusion reached in 65 Ops. Cal. Atty. Gen. 527, *supra* . Subdivision (c) of section 830.5 now provides:

"The following persons may carry a firearm while not on duty: a parole officer of the Department of Corrections or the Department of the Youth Authority, a correctional officer employed by the Department of Corrections or any employee of the Department of the Youth Authority having custody of wards or any employee of the Department of Corrections designated by the Director of Corrections. Nothing in this section shall be interpreted to require licensure pursuant to Section 12025. The director of the agency may deny or revoke for good cause a person's right to carry a firearm under this subdivision. That person shall, upon request, receive a hearing to review, as provided for in the negotiated grievance procedure between the exclusive employee representative and the Department of Corrections or the Department of the Youth Authority, the director's decision."

Accordingly, when the Legislature has intended to give the employing agency of a peace officer the authority to prohibit or allow the carrying of a firearm while off duty, it has expressly circumscribed this grant of authority. The absence of such provision in section 830.31 suggests a different legislative intent. (See People v. Moore, *supra* , 178 Cal. App. 3d 898, 903.)[3]

In answer to the first question, therefore, we conclude that although a district attorney has the authority to prohibit or allow the carrying of firearms by on-duty welfare fraud investigators employed in his office, such authority is lacking when the investigators are off duty.

2. Licensing Requirements

The second question posed concerns whether the welfare fraud investigators must obtain a license to carry concealed a concealable weapon while off duty.

Section 12025 states:

"(a) Except as otherwise provided in this chapter, any person who carries concealed within any vehicle which is under his or her control or direction any pistol, revolver, or other firearm capable of being concealed upon

---

[3]Under Government Code section 1126, a public agency may prohibit the off-duty activities of its employees that "are inconsistent with, incompatible to, or in conflict with their duties as local agency officers or employees."

the person without having a license to carry such firearm as provided in this chapter is guilty of a misdemeanor.

"(b) Any person who carries concealed upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person without having a license to carry such firearm as provided in this chapter is guilty of a misdemeanor . . . ."

With certain exceptions this section requires a license to carry a concealable weapon upon one's person or within a vehicle. Such licenses are issued by sheriffs and police chiefs pursuant to the terms of section 12050.

Would the prohibition of section 12025 apply under the facts presented? As indicated in the statute, exceptions have been incorporated into the statutory scheme by the Legislature. We find one exception applicable here.

Section 12027 provides in part:

"Section 12025 does nor apply to or affect any of the following:

"(a) Peace officers listed in Section 830. 1 or 830.2 whether active or honorably retired, *other duly appointed peace officers*, honorably retired peace officers listed in subdivision (c) of Section 830.5, full-rime paid peace officers of other states and the federal government who are carrying out official duties while in California, or any person summoned by such officers to assist in making arrests or preserving the peace while he is actually engaged in assisting such officer." (Emphasis added.)

In 63 Ops. Cal. Atty. Gen. 385, *supra* , 388-390, we analyzed this statutory language as follows:

"Turning to the words of section 12027, we find that the Legislature has exempted from the provisions of section 12025 'duly appointed peace officers.' Department of Corrections peace officers are duly appointed peace officers' while they are on duty at work or while they are off duty. In the absence of countervailing circumstances, it must be assumed that the Legislature meant to say what it said in drafting the stature. (Tracy v. Municipal Court (1978) 22 Cal. 3d 760, 764.) If the Legislature had intended the exemption in section 12027 to apply to peace officers only when they were acting with peace officer authority it could have so stated.

"We note that when the Legislature has determined to limit the exemption of section 12027 to a person while such person is acting in the course of a certain duty, it has done so. Thus, subdivision (a) of section 12027 provides that a person summoned by any peace officer to assist in making an arrest or preserving the peace is exempt 'while he is actually engaged in assisting such officer.' Likewise, subdivision (c) exempts members of the armed forces 'when on duty.' Subdivision (e) exempts certain guards and messengers 'while actually employed in and about the shipment, transportation, or delivery of any money, treasure, bullion, bonds, or other thing of value within this state.' Likewise, subdivisions (f), (g), and (h) exempt members of shooting clubs, licensed hunters or fishermen, and members of antique gun clubs during the period they are engaged in such activities. Had the Legislature wanted to place a similar restriction on peace officers and restrict their section 12027 exemption to duty hours, presumably it would have done so as in the case of the other classes referred to in that section.

" . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"We have considered the possibility that the Legislature intended that the exemption of section 12027 would only apply to peace officers while they are acting within the scope of peace officer authority. The wording of the section negates any such intention on the part of the Legislature. Peace officers listed in sections 830.1, 830.2, or subdivision (a) of 830.3 are exempt whether they are active or honorably retired. For example, a member of the San Francisco Bay Area Rapid Transit District Police Department who is honorably retired falls within the exemption. (See 830.2, subd. (f).) Consequently, we see no basis for assuming that the Legislature intended to limit the exemption of peace officers to those times when they are acting within the scope of their authority as police officers." (Fn. omitted.)[4]

In 65 Ops. Cal. Atty. Gen. 527, *supra* , 530, we observed:

"There is nothing in either section 12025 or 12027 which would

---

[4]In 64 Ops. Cal. Any. Gen. 832, *supra* , 836, we said that "we modify our opinion in 63 Ops. Cal. Atty. Gen. 385 by reason of the subsequent change in the law." This legislative change was with respect to on-duty peace officers designated in section 830.5. The statute has since been amended again (Stats. 1981, ch. 1142, § 5; Stats. 1982, ch. 1086, § 1; Stats. 1984, ch. 702, § 1), including a new provision concerning off-duty activities (§ 830.5. subd. (c), *supra* ). Our opinion in 64 Ops. Cal. Atty. Gen. 832 dealt only with on-duty officers; we reaffirm our opinion in 63 Ops. Cal. Atty. Gen. 832 with respect to whether off-duty officers require a license.

indicate that the 'duly appointed peace officers' exempted from section 12025 by section 12027 are not those designated by chapter 4.5 [§§ 830- 832.8]. In fact the enactment of those words in section 12027 as part of the same statute which enacted chapter 4.5 (ch. 1222, § 61, Stats. 1968) clearly demonstrates the Legislature's intention that the chapter 4.5 definitions were to apply to the 'peace officers' exempted from section 12025 by section 12027."

Peace officers who are duly appointed under sections 830-832.8 do not lose their appointments when they are off duty.[5] The Legislature has determined that peace officers need not obtain a license in order to carry concealed a concealable weapon. The Legislature has provided the same exemption for certain other persons who are not peace officers and have no peace officer powers. It is apparent from the language of section 12027 that whether a person is exempt from licensure is not dependent upon whether the person may carry a weapon while employed. (See also § 830.5, subd. (c).) The Legislature has broad authority to exempt individuals from its own licensing requirements; its authority is subject only to constitutional limitation, and we find no constitutional impediment here to this regulatory scheme. (See Burg v. Municipal Court (1983) 35 Cal. 3d 257, 266-267; Hernandez v. Department of Motor Vehicles (1981) 30 Cal. 3d 70, 78-84 ; McCaffrey v. Preston (1984) 154 Cal. App. 3d 422, 430-431; People v. Smith (1918) 36 Cal. App. 88, 89-90.)

Although a peace officer is not required to have a license as set forth in section 12027, this exemption means only that he may carry concealed a concealable weapon without committing the crime specified in section 12025. It does not mean, of course, that he may carry a weapon while on duty if prohibited by his employer. Employers normally control the (lawful) activities of their employees in employment situations. Different considerations are present when determining whether a weapon should be carried while performing employment-related duties. In noting that a city may place more restrictive standards upon the conduct of its police officers in the use of firearms than applicable to private citizens, the court in Long Beach Police Officers Assn. v. City of Long Beach (1976) 61 Cal. App. 3d 364, 375-376, stated:

> "[T]he city, as employer of the officer and a potential codefendant in a suit for wrongful death or injury, has an interest in the officer's conduct which it lacks toward a private citizen. . . . Police officers are constitutionally subject to many burdens and restrictions that private citizens are not."

The courts have repeatedly pointed to the " 'delicate judgment . . . best exercised by the . . .

---

[5]Some peace officers are classified as such only while performing certain specified duties. (See, e.g., § 830.4; 65 Ops. Cal. Atty. Gen. 618, 625-626 (1982).) The treatment of such officers under section 12027 is outside the scope of this opinion.

executive officers' " concerning the on-duty use of weapons by peace officers. (See California State Employees' Assn. v. Enomoto, *supra* , 118 Cal. App. 3d 599, 604; see also Stuessel v. City of Glendale, *supra* ,  141 Cal. App. 3d 1047, 1053-1054; California State Employees' Assn. v. Way, *supra* , 135 Cal. App. 3d 1059, 1064-1065; Long Beach Police Officers Assn. v. City of Long Beach, *supra* , 61 Cal. App. 3d 364, 371-373.)

In answer to the second question, therefore, we conclude that a welfare fraud investigator employed in a district attorney's office is exempted by 12027 from the requirement to have a license to carry concealed a concealable weapon while off duty.