FRANSON, J.,
Dissenting.—The People appeal the trial court’s order granting defendant Alfredo Perez, Jr.’s petition to recall his sentence, contending Perez was armed with and used a deadly weapon during the commission of an assault. The majority agrees and reverses the trial court’s order granting defendant’s petition. Based on the trial court’s underlying factual findings and determination, I respectfully dissent and would affirm.

Factual and Procedural Background

The following summary of facts pertinent to this appeal come from the appellate opinion affirming Perez’s current conviction, which is repeated verbatim in the majority opinion. At trial, Fred Sanchez testified he was working as a sales clerk at Grand Auto in Fresno on March 17, 1994, when Perez and another man (the passenger) entered the store midafternoon. The passenger, with his back to Sanchez, was seen holding a Club, an automobile anti-theft device. Perez spoke briefly to the passenger and then went up to Sanchez and spoke to him about tires. During this conversation, the passenger left the store and went to stand by the passenger side of a Blazer-type vehicle. Perez left the store, went to the driver’s side of the vehicle, and the two drove away. Sanchez suspected the passenger had stolen the Club from the store and that Perez had tried to divert his attention away from the theft.
The following day, Sanchez saw the passenger again enter the store. Sanchez approached the passenger, asked if he needed assistance, and, after alerting other store employees that he needed assistance, followed him out of the rear of the store. While following the passenger, Sanchez heard rustling in the passenger’s clothing, although he had not paid for any items from the store.
Once out of the store, the passenger entered the passenger side of the same Blazer as the day before. Perez was again driving. Sanchez approached the open passenger window and observed a bulge protruding from the passenger’s clothing. Sanchez told the passenger to give the merchandise back and he could leave. Sanchez then reached into the vehicle and grabbed the package under the passenger’s jacket, which turned out to be an “Ultra Club.” Sanchez said, “Give it up.” Perez looked toward Sanchez and said the same.
*831 Perez then drove the vehicle in reverse while the passenger held onto Sanchez’s arm. Sanchez implored Perez to stop the vehicle as it continued to move in reverse. Sanchez was dragged by the movement of the vehicle and had to run to keep his balance. Perez then put the vehicle in drive and the vehicle moved forward approximately 50 feet, when Sanchez was able to pull his arm free.[1] Sanchez estimated the Blazer was going about 20 miles per hour, although he admitted that at the prelintinary hearing he estimated the vehicle started at 10 miles per hour and was going about 15 miles per hour when he pulled his arm free. Sanchez estimated that the entire incident took about a minute, 15 seconds of that with his arm in the vehicle as it was moving forward.
After he broke free, Sanchez saw the vehicle leave. A coworker of Sanchez described Sanchez as “running for his life” alongside the Blazer.
A jury convicted Perez of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, former subd. (a)(1))[2] and found true the allegations that Perez had sustained two prior strike convictions and suffered two prior prison terms. The trial court sentenced Perez to an indeterminate term of 25 years to life, plus two one-year enhancements for the prison priors.

Resentencing Under Proposition 36

The trial court’s consideration of a petition for resentencing under Proposition 36 is a two-step process. First, the court determines whether the petitioner is eligible for resentencing. If the petitioner is eligible, the court proceeds to the second step, and resentences the petitioner under Proposition 36 unless it determines that doing so would pose “an unreasonable risk of danger to public safety.” (§ 1170.126, subd. (1).)
At issue here is the first step of the process—the initial eligibility determination. Section 1170.126 grants the trial court the power to ultimately determine whether a third strike offender is eligible for resentencing only if, as an initial matter, the inmate satisfies the criteria set out in subdivision (e) of section 1170.126. Generally, for purposes here, those criteria are: (1) the inmate is serving a life term under the three strikes law for a conviction of a felony or felonies not defined as serious and/or violent under section 1170.126; (2) the inmate’s current sentence was not imposed for an offense in which the defendant used or was armed with a firearm or deadly weapon; and *832 (3) the inmate has no prior convictions for certain specified offenses. If the inmate does not satisfy each of the criteria, the trial court must deny the request for resentencing. Perez satisfies the first and third requirements. This appeal relates to the second criteria.
DISCUSSION

Eligibility Determination

The eligibility determination required by section 1170.126, subdivision (e) is not a discretionary determination by the trial court. (People v. Bradford (2014) 227 Cal.App.4th 1322, 1336 [174 Cal.Rptr.3d 499].) The Three Strikes Reform Act of 2012 (§ 1170.126 et seq.) (the Act) provides that “the court shall determine whether the petitioner satisfies the criteria in subdivision (e). . . .” (§ 1170.126, subd. (f).) And because the Act fixes ineligibility not on statutory violations or enhancements, but on “facts attendant to commission of the actual offense, the express statutory language requires the trial court to make a factual determination that is not limited by a review of the particular statutory offenses and enhancements of which petitioner was convicted.” (People v. Bradford, supra, at p. 1332, italics added.)
Instead, “the trial court must make this factual determination based solely on evidence found in the record of conviction . . . .” (People v. Bradford, supra, 227 Cal.App.4th at p. 1331, italics added.) As stated in People v. Oehmigen (2014) 232 Cal.App.4th 1 [181 Cal.Rptr.3d 569], “[Eligibility is not a question of fact that requires the resolution of disputed issues. The facts are limited to the record of conviction underlying a defendant’s commitment offense; the statute neither contemplates an evidentiary hearing to establish these facts, nor any other procedure for receiving new evidence beyond the record of conviction. [Citation.] What the trial court decides is a question of law: whether the facts in the record of conviction are the proper subject of consideration, and whether they establish eligibility.” (Id. at p. 7, original italics.) As stated recently in People v. Newman (2016) 2 Cal.App.5th 718, 721 [206 Cal.Rptr.3d 427], “In determining eligibility for Proposition 36 relief, a court is empowered to consider the record of conviction and to make factual findings by a preponderance of the evidence, even if those findings were not made by the jury or the trial court in convicting a defendant of the current offense.”[3] (Italics added.) Simply put, the trial court takes the facts from the *833 record of conviction and determines, from its interpretation of those facts, whether a petitioner is eligible for resentencing.
“[Disqualifying factors need not be pled and proved to a trier of fact beyond a reasonable doubt; hence, a trial court determining whether an inmate is eligible for resentencing under section 1170.126 may examine relevant, reliable, admissible portions of the record of conviction to determine the existence of a disqualifying factor.” (People v. Blakely (2014) 225 Cal.App.4th 1042, 1048-1049 [171 Cal.Rptr.3d 70].) For this purpose, the record of conviction includes pleadings, trial transcripts, pretrial motions, and any appellate opinion. (See, e.g., People v. Manning (2014) 226 Cal.App.4th 1133, 1140-1141 [172 Cal.Rptr.3d 560]; People v. Osuna (2014) 225 Cal.App.4th 1020, 1027, 1030 [171 Cal.Rptr.3d 55]; People v. White (2014) 223 Cal.App.4th 512 [167 Cal.Rptr.3d 328].) “[A] trial court need only find the existence of a disqualifying factor by a preponderance of the evidence. (Evid. Code, § 115; [citation].)” (People v. Osuna, supra, at p. 1040.)

Standard of Review

The trial court’s underlying factual determination that Perez was eligible for resentencing is reviewed on appeal for substantial evidence. (People v. Bradford, supra, 227 Cal.App.4th at p. 1331; 3 Witkin & Epstein, Cal. Criminal Law (4th ed. 2016 supp.) Punishment, § 421C, p. 128.) Furthermore, “the task of an appellate court is to ‘review the correctness of the challenged ruling, not of the analysis used to reach it.’ [Citation.] ‘ “ ‘If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.’ [Citation.]” ’ ” (People v. Hughes (2012) 202 Cal.App.4th 1473, 1481 [136 Cal.Rptr.3d 538].)

Trial Court Hearing and Order

At the hearing on the petition, the trial court reviewed the facts and circumstances of the prior conviction and made the preliminary determination that they did not support a finding of ineligibility. The court was provided with a copy of this court’s 1996 opinion affirming Perez’s conviction and the People’s summary of the facts from that opinion. The court described its interpretation of the facts of the conviction, as the victim being “dragged slightly, though the dragging wasn’t anything more than keeping pace with the car.” It further described the use of the vehicle as “incidental.”
*834 The People argued that Perez became armed with the vehicle for purposes of the statute, ‘“[t]he moment that Mr. Perez chose to use the vehicle as a weapon as a means of his assault.” The trial court stated, in reviewing Perez’s file, that he was never charged with assault with a deadly weapon.[4] The People explained that, at the time Perez committed his crime, ‘“it would have had very little meaning to file an assault with a deadly weapon.” The trial court acknowledged that it had previously ruled in earlier cases that, ‘“if there are facts that support use of a deadly weapon, even though they are not charged, and there is not a conviction, the person is still excluded from [resentencing] reconsideration.”
The court then focused on the difference between a defendant who ‘“used” a firearm or deadly weapon and a defendant who ‘“was armed” with a firearm or deadly weapon. The People agreed with the trial court that, when Perez was sitting in his vehicle and the vehicle was not moving, the vehicle was not a weapon. The trial court explained that, had Perez had a knife in a sheath under his shirt at the time, the court would find him ineligible.
The People continued, arguing that when Sanchez put his arm into the vehicle, Perez had an “election” to make: (1) to leave the vehicle as a vehicle by asking Sanchez to remove his arm from the vehicle, turn off the vehicle and resolve the issue; or (2) to use the vehicle as the mechanism of the assault, which would convert the vehicle into a weapon. According to the People, Perez chose the second option. As argued by the People, Perez was armed with a deadly weapon because “use” encompasses “armed,” whereas “armed” does not encompass “use.”
In response, the trial court read from an order it had issued in earlier resentencing hearings, explaining its understanding of the rationale behind Proposition 36, which stated that it did not think the voters of Proposition 36 “in any way were being told at that point, ‘if an individual uses something that is not in and of itself a . . . deadly weapon, that they would not be eligible.’ ” Following that line of reasoning, the trial court posed a hypothetical, asking the People what their argument would be if the passenger had gotten into the vehicle with the anti-theft device, Sanchez approached the vehicle and said “[d]on’t leave,“ Perez grabbed the anti-theft device, threw it at Sanchez and drove away. Under the People’s argument, the trial court reasoned Perez would have converted the anti-theft device, which is not *835 inherently a deadly weapon, into the use of a deadly weapon, making him ineligible for resentencing.
The People made the distinction between someone releasing a stolen item and giving it back, and throwing the item and hitting the victim in the skull or attempting to hit the victim with the item. The latter example, argued by the People, “convert[s] the Club into exactly that, a club, and it was being used then as an instrument for the assault and was a dangerous or deadly weapon.”
With that, the trial court then issued its ruling, stating: ‘“Okay. I understand your position. I understand your argument. . . . [I]t is . . . very well-reasoned. ... I think your argument is clear, if you want to take this further, the fact [is] that the Court is going to deny it. I am going to finalize the order. For that purpose, ... I am finding that the defendant is not ineligible to be resentenced, due to the method in which the motor vehicle was used in this offense. So I have tried to give you as clear language as I can.” (Italics added.)

Analysis

The trial court reviewed and weighed the facts, including the credibility of the estimated speeds and length of time for the incident[5] and determined, based on its review and interpretation of the facts, that the method used by Perez in maneuvering his car to depart the scene did not convert an object otherwise not inherently a deadly weapon, into one. Utilizing this factual determination, Judge Conklin reached the legal conclusion that Perez was not armed with, or used, a deadly weapon and was therefore eligible for resentencing. This determination was not made because of any misunderstanding of Proposition 36. Based on the record, and the trial court’s comments, he clearly understood the mandates of Proposition 36 and properly applied them to the facts, as he interpreted them, to reach his decision. The record supports the trial court’s determination of eligibility, based on the method in which the vehicle was used in the offense Perez was convicted of. The trial court did not, contrary to the majority’s assertion (maj. opn. ante, at pp. 825-826, fn. 14), contradict the jury’s verdict. It simply made factual findings that went beyond those made by the jury.
*836 While I agree that an object not inherently deadly may be made deadly by its use and all other factors relevant to the issue, the factual determinations made by the trial court in this case fail to support this legal conclusion. Examples of vehicles used as deadly weapons are cited by the majority in part II. of the Discussion, but are clearly much more egregious than the facts of this case, especially as interpreted by the trial court.
As a further example, in People v. Claborn (1964) 224 Cal.App.2d 38 [36 Cal.Rptr. 132], a vehicle was found to be a deadly weapon within the meaning of a section 245 assault when the defendant, upset by a family dispute, got into his vehicle and, upon seeing an approaching police car, swerved and aimed his vehicle directly at the officer’s car, causing a head-on collision. The defendant then got out of his vehicle and shouted, “ ‘You son-of-a bitch, I didn’t kill you this way, but I will kill you now,’ ” and physically attacked the officer. (People v. Claborn, supra, at p. 41.)
In determining whether a defendant is ineligible for resentencing under the Act, a trial court examines the “conduct that occurs during the commission of an offense.” (People v. Bradford, supra, 227 Cal.App.4th at p. 1333.) Here, the record does not show Perez sped away with Sanchez’s arm trapped in the car; he did not ram him with his vehicle, nor did he aim for him while driving. Instead, the facts contained in the record, as interpreted and cited by the trial court, were that Perez assaulted Sanchez when, while he was in the driver’s seat of the vehicle, Sanchez reached into the passenger window in an attempt to retrieve the anti-theft device, the passenger grabbed Sanchez’s arm and Perez then drove the vehicle slowly in reverse, to effect a getaway, while the passenger held onto Sanchez. Sanchez implored Perez to stop the vehicle as it continued to move in reverse. Sanchez was dragged by the movement of the vehicle and had to run to keep his balance. Perez then put the vehicle in drive and the vehicle moved forward. Sanchez was able to pull his arm free. Sanchez received no injuries other than a few scrapes. While Sanchez estimated the Blazer was going between 10 and 20 miles per hour and that the entire incident took about a minute, common sense dictates otherwise.
Perez’s section 245, former subdivision (a)(1) conviction was based on an assault by any means of force likely to produce great bodily injury, and does not come within section 1192.7, subdivision (c)(23) use of a deadly weapon exclusion making him ineligible for resentencing. (People v. Williams (1990) 222 Cal.App.3d 911, 914 [272 Cal.Rptr. 212].) Nor does it come within the “armed with a . . . deadly weapon” exclusions pursuant to section 667, subdivision (e)(2)(C)(iii) and section 1170.12, subdivision (c)(2)(C)(iii), as referenced in section 1170.126, subdivision (e)(2).
*837 Substantial evidence supports the trial court’s determination that Perez’s use of the vehicle was not a deadly weapon within the meaning of the use of a deadly weapon exclusions and, thus, he was eligible for a recall of his life sentence and for resentencing under the Act.
Respondent’s petition for review by the Supreme Court was granted January 11, 2017, S238354.

 There is no indication Perez was injured as a result. At the subsequent healing on the petition for resentencing, the parties described the injury as “not major” and “a few scrapes.” The injury required no hospitalization or medical treatment.

 All further statutory references are to the Penal Code unless otherwise stated.

 In People v. Newman the defendant was convicted of assault by means of force likely to produce great bodily injury (§ 245, former subd. (a)(1)) but found not true the allegation that he inflicted great bodily injury on the victim during the assault (§ 12022.7). Defendant subsequently filed a Proposition 36 petition for recall and resentencing. In denying the petition, the court found the defendant, based on the facts of the case, intended to cause great bodily *833 injury in the commission of the assault, disqualifying him from resentencing. (People v. Newman, supra, 2 Cal.App.5th at pp. 722-723.)

 I note the jury was instructed only on the theory of “by means of force likely to produce great bodily injury.” (CALJIC No. 9.02) I take judicial notice of the record in the appeal of the underlying offense (People v. Perez, supra. F023703) and also note that the prosecutor did not argue at trial that the use of the vehicle constituted use of a deadly weapon during the assault.

 As an aside, I take judicial notice of the fact that the world record for the 100-meter sprint is 9.58 seconds, a rate of 23.35 miles per hour. As such, the speed suggested by the victim’s testimony seems implausible and provides additional support for the trial court’s implied credibility findings. (Evid. Code, § 452, subd. (h); In re Jessica C. (2001) 93 Cal.App.4th 1027, 1043 [113 Cal.Rptr.2d 597] [“A trier of fact is free to disbelieve a witness, even one uncontradicted, if there is any rational ground for doing so.”].)